James A. Patten (ID #1191)
Molly S. Considine (ID #13800)
**PATTEN, PETERMAN, BEKKEDAHL & GREEN, P.L.L.C.**
2817 2nd Avenue North, Ste. 300
P.O. Box 1239
Billings, MT 59103-1239
Telephone (406) 252-8500
Facsimile (406) 294-9500
Email: apatten@ppbglaw.com
      mconsidine@ppbglaw.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>EAGLE BEAR INC.,<br><br>                Debtor. | Case No. 22-40035<br>Chapter 11<br><br>**DEBTOR'S MOTION TO DETERMINE THE EXTENT OF THE AUTOMATIC STAY** |

      EAGLE BEAR, INC., ("Debtor"), by and through their attorneys James A. Patten and Molly S. Considine, move this Court, pursuant to 11 U.S.C. §§ 105 and 362, 28 U.S.C. § 157(b)(2)(A), (M), and (O), and F. R. Bankr. Pro. 9014, to determine whether the automatic stay prohibits the Blackfeet Indian Nation ("Blackfeet Nation") from interference with Debtor's and its customers' access to the Debtor's campground on land leased from the Blackfeet Nation.

      In support hereof, the Debtor states:

## INTRODUCTION

      This Motion involves the intersection of 11 U.S.C. §§ 106, 362, and 365.

      The Debtor leases ground adjacent to Glacier National Park from the Blackfeet Nation.

1

For several years the Debtor and the Blackfeet Nation have been in litigation concerning the Blackfeet Nation's contention that the Debtor has breached the lease. Matters are currently pending before the Bureau of Indian Affairs, the U.S. District Court for the District of Montana, the Ninth Circuit Court of Appeals, and the Blackfeet Tribal Court.

The Debtor operates a Kampgrounds of America campground on the land leased from the Blackfeet Nation. The campground is opened during the summer tourist season. The campground was scheduled to open for its summer 2022 season on May 19, 2022. Recently, the Blackfeet Nation installed padlocks on the gates into the Debtor's campground as well as barriers across the road. The Blackfeet Nation asserts the lease was terminated in 2008 and the Debtor has no rights to occupy or conduct business on the leased ground, despite the last 14 years of campground operation and lease payments. After the commencement of this case on Monday, May 23, the Debtor upon consultation with the Blackfeet Nation's attorney, Joseph McKay, was informed that the Blackfeet Nation will prohibit all access to the campground whether through locked gates or by blocking the access road. To avoid a situation in which guests arrived at the campground and were met with roadblocks, locked gates, and Tribal Law Enforcement officers, Debtor cancelled a week of reservations in light of the Blackfeet Nation's actions. The campground is now scheduled to open on Thursday, May 26, 2022.

Through this Motion, the Debtor seeks an order of this Court clarifying the application of the automatic stay and its prohibition of the actions prohibiting access to the Debtor's leasehold.

## FACTUAL AND PROCEDURAL BACKGROUND

The Debtor is the lessee under the Recreation and Business Lease Agreement ("Lease") with the Blackfeet Nation. The Lease was made in April 1997 with the approval of the Secretary of the U.S. Department of the Interior, who is responsible for administering the Lease for and on

2

4:22-bk-40035-BPH   Doc#: 8   Filed: 05/24/22   Page 2 of 14

behalf of the Blackfeet Nation. The Blackfeet Nation cannot unilaterally cancel the Lease. Only the BIA can cancel the Lease. In August 2017, the Blackfeet Nation asked the Blackfeet Agency Superintendent of the Bureau of Indian Affairs (the "Superintendent") to cancel the Lease, alleging that the Debtor failed to perform certain terms of the Lease, including terms related to payment, improvements, and accounting. The Debtor denied the Blackfeet Nation's allegations and demanded arbitration and mediation pursuant to the provisions of the Lease.

The Superintendent initially agreed with the Debtor but later retracted her decision and notified the Debtor that the lease was cancelled. The Debtor appealed the Superintendent's decision to the Regional Director of the Bureau of Indian Affairs who subsequently overturned the Superintendent's cancellation because mediation and arbitration must be pursued before the lease can be cancelled. The Blackfeet Nation then appealed the Regional Director's decision to the Interior Board of Indian Appeals ("IBIA").

While that Lease was pending, the Debtor exercised its option to extend the Lease term for 25 years. The Lease had an initial term of 25 years which expired in April 2021. The Lease gave the Debtor an option to extend the Lease for an additional 25 year term. The Debtor exercised that option and gave notice to the Blackfeet Nation of the extension in October 2020. In response, the Blackfeet Nation purported to exercise its option under the Lease to purchase the additional 25-year term, but its purported exercise was untimely. Eagle Bear rejected the Blackfeet Nation's untimely attempt to purchase the additional term but indicated that it remained open to buyout offers from the Blackfeet Nation. In response, and after consulting with the Blackfeet Nation, the Superintendent issued a decision extending the Lease for a 3-year period while the Blackfeet Nation "work[ed] through issues at dispute" with the Debtor and waited for a decision from the IBIA. The Superintendent issued a decision on March 17, 2021

extending the Lease for a 3-year period. This decision was appealed to the Regional BIA Director by both the Debtor and the Blackfeet Nation. In August 2021, the Regional Director ruled in favor of the Debtor and the Blackfeet Nation on the grounds that the Superintendent lacked the authority to unilateral approve the modification to extend the Lease for 3 years.

Meanwhile, after the Blackfeet Nation failed to timely exercise its option to buy the second 25-year lease term and while the IBIA appeal was pending, the Blackfeet Nation presented the IBIA with a new theory: that the Lease was cancelled by the BIA in 2008. In 2008, the BIA had issued a cancellation letter to Eagle Bear, in which it alleged that Eagle Bear had failed to timely pay rent under the Lease. Eagle Bear paid the amount the BIA alleged was outstanding and timely appealed the cancellation letter, which automatically prevented the cancellation from taking effect. After several months with no communication from the BIA, Eagle Bear reached out to the BIA. Employees of the BIA informed Eagle Bear that its payments under the Lease were current and that it could withdraw its appeal. Eagle Bear did so, conditionally withdrawing the appeal on the basis that the appeal was moot. Neither the BIA nor the Blackfeet Nation challenged that decision, and the BIA never issued a decision affirming or otherwise reinstating the lease cancellation. Consequently, the Lease was never cancelled, remained in effect, and the parties operated under the Lease for the next decade. 25 C.F.R. §§ 2.19(a), 162.621 (2008); *Spicer v. Eastern Oklahoma Reg. Dir.*, 50 IBIA 328, 331 (2009) (a BIA decision is automatically stayed during the appeal process); *Two Hundred and Seventy-one Enrolled Nooksak Indians v. Northwest Reg. Dir.,* 61 IBIA 77, 83 (2015) (denying Tribe's attempt to "preempt BIA's appeal regulations" and holding the underlying decision "was not immediately effective, but was instead subject to the automatic stay found in 25 C.F.R. § 2.6.").

Nearly thirteen years later, however, the Tribe began claiming to the IBIA that because there was no decision from the BIA overturning its 2008 cancellation letter, the Lease was effectively and forever cancelled in 2008. Confronted with this argument, the IBIA remanded the pending appeal to the BIA to consider the Tribe's 2008 cancellation argument as part of the ongoing administrative appeal. That remand is currently pending before the BIA Regional Director. (Ex. 1 at 1-2, 4-5 (The Tribe argues "on appeal that the Lease was previously canceled by the Superintendent in a decision dated June 10, 2008. . . . The Regional Director requests a voluntary remand 'so that a decision may be made on the validity of the Superintendent's June 10, 2008, decision to cancel the lease.' . . . On remand, the Regional Director shall consider and address, as appropriate, the issues and arguments raised by the Tribe and Eagle Bear in their submissions filed in this appeal.")).

In addition to making these arguments with the IBIA, the Blackfeet Nation also filed a complaint in the Blackfeet Tribal Court making the same allegations as presented to the IBIA and asserting that the Lease had been cancelled in 2008. The Blackfeet Nation asked the Tribal Court to decide that the Lease had been cancelled, that Eagle Bear and its president, Will Brooke, had trespassed, and that Eagle Bear and Will Brooke were liable for damages related to breaches of the Lease.

Debtor moved to dismiss the Blackfeet Nation's Tribal Court Complaint. It explained that the Blackfeet Nation's claims were predicated on a federal question—whether the Lease was cancelled—over which the Tribal Court had no jurisdiction, that the question and claims were subject to arbitration, and that the question and claims were presently and properly before the IBIA and BIA. That motion to dismiss has been fully briefed. A hearing on the motion was held by the Tribal Court on May 19, 2022. The Tribal Court has not issued any decision on the

motion. Debtor has filed a notice of bankruptcy and automatic stay in the Tribal Court.

In addition to its motion to dismiss to the Tribal Court, the Debtor filed an action in the U.S. District Court for the District of Montana, *Eagle Bear Inc. et al. v. The Blackfeet Indian Nation et al.*, 21-CV-00088-BMM. In that matter, the Debtor asked the District of Montana to determine that the Tribal Court lacked jurisdiction over the Tribal Court Complaint. The Debtor explained that the Blackfeet Nation was attempting to evade an ongoing Bureau of Indian Affairs and IBIA administrative proceedings regarding the Lease. The Debtor further explained that the Blackfeet Tribal Court could not exercise jurisdiction over the federal questions regarding the Lease's validity, which are initially subject to arbitration and to the authority of the BIA under its comprehensive federal regulatory scheme. (21-CV-00088 ECF No. 1).

The Debtor moved for a preliminary injunction prohibiting the Blackfeet Nation from pursuing claims and relief for trespass and eviction in the Blackfeet Tribal Court (21-CV-00088 ECF. No. 4).

In December 2021, the U.S. District Court denied the Debtor's motion for preliminary injunction (21-CV-00088 ECF. No. 27). Although it recognized that the record before it was incomplete and that its ruling would not have preclusive effect, the Court decided based on the preliminary record before it that "[I]t appears from the record that Eagle Bear failed to uphold the terms of the lease." The District Court summarized a partial record of the 2008 cancellation which the Debtor contends was resolved upon payment of the 2007 rent. The District Court further identifies that the Debtor continued in possession of the leased land until the Blackfeet Nation requested the BIA to cancel the Lease in August 2017.

The Debtor appealed the District Court's order denying the preliminary injunction to the Ninth Circuit Court of Appeals where it is docketed at case no. 21-36003. Debtor has asked the

Ninth Circuit to consider the same matters presented in Debtor's motion to the District Court, including that the Tribal Court plainly lacks jurisdiction over the Tribal Court Complaint and the questions therein, which are federal questions subject to arbitration and BIA authority.  The matter is set for oral argument on June 6, 2022, though Debtor has filed a notice of bankruptcy and automatic stay in the Ninth Circuit Court of Appeals.

The Blackfeet Nation abandoned the foregoing administrative and judicial proceedings in the spring of 2022.  Beginning in April 2022, while the foregoing actions were pending, the Blackfeet Nation began resorting to self-help and threatening to unilaterally and extra-judicially take possession of the Campground.  Its threats turned into actions on May 16, 2022, when it locked the gates to the Campground and posted law enforcement officers outside the gates.  The Blackfeet Nation initially told Debtor that Debtor and its employees could come and go from the Campground, but that Debtor would not be allowed to accept guests onto the Campground. As a result, Debtor was forced to cancel all reservations from May 19, it scheduled opening date, and its new targeted opening date of May 27, 2022.  The Blackfeet Nation has since directed Debtor to vacate the Campground and has represented that it will bar the entrance to the Campground or the road to the Campground before letting Debtor accept guests for the summer 2022 camping season.  Thus, after being forced to postpone its May 19 opening date and cancelling all reservations, Debtor is presently set to begin receiving guests from all over the world on May 27, 2022.

**THIS MOTION IS PROPERLY PRESENTED TO THIS COURT**

It is fundamental that if a matter arises under Title 11 a bankruptcy the bankruptcy court has jurisdiction to address that matter. 28 U.S.C. § 1334(b).

7

4:22-bk-40035-BPH   Doc#: 8   Filed: 05/24/22   Page 7 of 14

### *This Court has Jurisdiction over the Blackfeet Nation in this Case*

Section 106 of the Bankruptcy Code abrogates the sovereign immunity of government units which include Indian Tribes. *Krystal Energy Co. v. Navajo Nation*, 357 F.3d 1055, 1058 (9th Cir. 2004) ("…'Indian tribes' is simply a specific member of the group of domestic government, the immunity of which Congress intended to abrogate…Therefore, Congress expressly abrogated the immunity of Indian tribes"). This Court has the authority to determine if the automatic stay is applicable to the Blackfeet Nation under the circumstances of this case.

### *The Issue of the Status of the Lease is a "Core" Issue*

Notwithstanding the multiple forums in which the status of the Lease is an issue, it is a core issue in this bankruptcy case. This Court has primacy among the various forums in which to resolve the status of the Lease. It is axiomatic that bankruptcy "judges have authority to 'hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 … and may enter appropriate orders and judgments …" *In re Goodman*, 991 F.2d 613, 616 (9th Cir. 1993). Here, the issues are whether the Lease is an asset of the bankruptcy estate and whether the automatic stay prohibits the actions of the Blackfeet Nation. These issues implicate and affect assets of the Debtor's bankruptcy estate.

"Orders approving the use or lease of property" is a "core" proceeding as defined by 28 U.S.C. § 157((b)(2)(M). If a matter is "core," a bankruptcy judge may enter a final judgment on the claim. *Executive Benefits Ins. Agency v. Arkison,* 573 U.S. 25, 34, 134 S.Ct. 2165, 189 L.Ed.2d 83 (2014). A motion to assume an executory contract pursuant to 11 U.S.C. § 365 is a core proceeding within the meaning of 28 U.S.C. § 157. *In re Point Center Financial, Inc.*, 957 F.3d 990, 997 (9th Cir. 2020). While this Motion does not involve an executory contract, it involves a lease which is also a subject of § 365.

The immediate issue before the Court implicates 11 U.S.C. § 362(b)(10) which provides that any act of a lessor to the debtor under a lease of non-residential real property which was terminated by the expiration of the stated term of the lease is not subject to the automatic stay. While the U.S. District Court in 21-CV-00088 indicated, based on the limited record before it and without discovery having been completed, that the Lease may have been extinguished, that is not a final determination as the case is proceeding in U.S. District Court for trial on the issue. Likewise, the issue of whether the Lease was cancelled in 2008—as opposed to whether the Tribal Court can decide the issue—was not presented to the U.S. District Court and its decision is presently on appeal. The filing of the instant bankruptcy case brings the lease dispute before this Court as a non-terminated lease is protected by the automatic stay.

### *This Court has Jurisdiction to Determine the Application of the Automatic Stay*

This Motion arises under Title 11 because it concerns the application of or extent of the automatic stay. As stated in *In re Gruntz*, 202 F.3d 1074 (9th Cir. 2000) at p. 1081:

> "In general, a 'core proceeding' in bankruptcy is one that 'invokes a substantive right provided by title 11 or . . . a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Gruntz*, 202 F.3d 1074, 1081 (9th Cir. 2000)(quoting *Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir. 1987). . . Central to the bankruptcy 'case' as to which exclusive Article I federal jurisdiction lies is the automatic stay imposed by 11 U.S.C. § 362(a). . . The 'automatic stay gives the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment and reorganization of his or her obligations. *MacDonald v. MacDonald (In re MacDonald),* 755 F.2d 715, 717 (9th Cir. 1985)."

The *Gruntz* court goes on to conclude: "[I]n sum, bankruptcy courts have the ultimate authority to determine the scope of the automatic stay imposed by 11 U.S.C. § 362(a)." *Id.* at 1087.

The automatic stay is applicable against "all entities" of the "continuation" of "administrative or other action against the debtor that was or could have been commenced before the commencement of the case under this title . . ." 11 U.S.C. § 362(a)(1). All "entities"

9

includes a "governmental unit," 11 U.S.C. § 101(15), which, in turn, includes a state … or domestic government." 11 U.S.C. § 101(27). As noted, the Bankruptcy Code abrogates sovereign immunity with respect to various Code provisions including the automatic stay. 11 U.S.C. § 106. An Indian tribe is a government unit within the meaning of 11 U.S.C. § 106, *Krystal Energy Co. v. Navajo Nation*, 357 F.3d 1055*, supra*, and is subject to the automatic stay.

"Determining the scope of the automatic stay" is precisely what the Debtor seeks through this Motion and is within the power of this Court to decide.

### *The Automatic Stay is Applicable to Prohibit the Blackfeet Nation from Interfering with Access to the Debtor's Leasehold*

The Bankruptcy Code, at § 362(b)(10), provides that actions taken by the lessor of a nonresidential lease that has terminated by the expiration of its terms before the commencement of the case or during the case are not prohibited by the automatic stay. There is a conflict among the courts as to whether an early termination for default, as the Blackfeet Nation alleges here, is an expiration under the terms of the lease within the meaning of § 362(b)(10).

In an early chapter 12 case, *In re Welborn*, 75 B.R. 242 (Bankr. D. Mont. 1987), Judge Peterson, construing a contract for deed for which the period to cure has expired prepetition, concluded that

> "the Debtors' interest in property terminated by the terms of the Agreement and Release, and the Debtors have no further interest in the ranch. In sum, as of March 15, 1987, the ranch was not property of the estate and could not be revived through a Chapter 12 proceeding."

The *Welborn* opinion quoted the Seventh Circuit Court of Appeals,

> "[W]hen a contract has been validly terminated pre-bankruptcy, the debtor's rights to continued performance under the contract have expired. The filing of a petition under Chapter 11 cannot resuscitate those rights." *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1204 (7th Cir. 1984) (citing *In re Triangle Laboratories, Inc.*, 663 F.2d 463, 467-68 (3rd Cir. 1981).

However, there is not unanimity regarding whether § 362(b)(10) is construed literally (the duration of time set out in the lease) or whether it includes leases terminated early due to an uncured default.

The courts taking the literal interpretation are *In re Indiana Hotel Equities, LLC*, 586 B.R. 870, 878 (Bankr. E.D. Mich. 2018)*; Robinson v. Chicago Hous. Auth.,* 54 F.3d 316, 318 (7th Cir. 1995); *Acevedo v. SC Real Estate, LLC*, 526 B.R. 761 766 (N.D. Ill. 2014); and *C.O.P. Coal Dev. Co. v. C.W. Mining Co.* (*In re C.W. Mining Co.*), 422 B.R. 746, 755–57 (10th Cir. BAP 2010), *aff'd*, 641 F.3d 1235 (10th Cir. 2011).

Courts taking the view that a nonresidential lease properly terminated before the end of its stated term fall within the § 362(b)(10) exclusion of the automatic stay are: *In re Lakes Region Donuts, LLC*, No. BR 13-11823, 2014 WL 1281507, at *5 (Bankr. D.N.H. March 27, 2014); *In re Moore*, 290 B.R. 851, 880 (Bankr. N.D. Ala. 2003); *In re Southcoast Exp., Inc.*, 337 B.R. 739, 742–43 (Bankr. D. Mass. 2006); *In re Policy Realty Corp.*, 242 B.R. 121, 128 (S.D.N.Y. 1999), *aff'd on other grounds*, 213 F.3d 626 (2d Cir. 2000); *In re T.A.C. Grp., Inc.*, 294 B.R. 199, 202 (Bankr. D. Mass. 2003); *In re Tiny's Café, Inc.*, 322 B.R. 224, 226 (Bankr. D. Mass. 2005).

Here, the issue is whether the Lease was cancelled in 2008 or 2017. That issue is undecided. Neither the Tribal Court, to which the Blackfeet Nation has taken the lease issues, has ruled, nor has the U.S. District Court, the BIA, or the IBIA. The Lease is central to the Debtor's financial future and its ability to pay its creditors.

The stated term of the Lease has not expired. No judicial or administrative body has ruled that the Lease has terminated due to a default. The plain language of the automatic stay and the facts of this dispute dictate that the automatic stay is currently in effect.

### *The Lease's Ipso Facto Bankruptcy is a Default Clause is Unenforceable*

Since the commencement of this case, the Blackfeet Nation has notified the Debtor that this bankruptcy filing is a breach of the Lease term that classifies a bankruptcy filing as a breach. Such *ipso facto* clauses are not enforceable. See, 11 U.S.C. § 365(e)(1)(B); *Summit Inv. and Development Corp. v. Leroux*, 69 F.3d 608, 610 (1st Cir. 1995); *In re Peaches Records and Tapes, Inc.,* 51 B.R. 583, 587, n. 6 (9th BAP, 1985). While it follows that the abrogation of the *ipso facto* clause is applicable to "unexpired" leases, the issue in this Motion is whether the Lease has expired. The *ipso facto* clause is not additional grounds of an alleged default.

### CONCLUSION

The automatic stay is enforceable against the Blackfeet Nation. As stated in *Gruntz*, "[T]he automatic stay gives the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment and reorganization of his or her obligations." 202 F.3d at 1081. This Court has the authority to determine whether the automatic stay applies to prevent the Blackfeet Nation from any further proceeding or action that will block the access to the Debtor's business. This issue needs immediate attention given the statements made by the Blackfeet Nation and its counsel.

Wherefore the foregoing, the Debtor, Eagle Bear, Inc., respectively requests this Court enter an order determining that the automatic stay is in effect, is applicable to the Blackfeet Nation, and prohibits the Blackfeet Nation from interfering with the Debtor's business operations on land leased from the Blackfeet Nation.

Dated this 24th day of May, 2022.

        **PATTEN, PETERMAN, BEKKEDAHL & GREEN, PLLC**
        2817 2nd Avenue North, Suite 300
        P.O. Box 1239
        Billings, MT 59103-1239

        By: /s/ JA Patten_____
            James A. Patten
            Attorney for Debtors

## NOTICE OF OPPORTUNITY TO RESPOND AND REQUEST A HEARING

**If you object to the motion, you must file a written responsive pleading and request a hearing within fourteen (14) days of the date of the motion. The responding party shall schedule the hearing on the motion at least twenty-one (21) days after the date of the response and request for hearing and shall include in the caption of the responsive pleading in bold and conspicuous print the date, time and location of the hearing by inserting in the caption the following:**

        **NOTICE OF HEARING**
        **Date:**_____
        **Time:**_____
        **Location:**_____

**If no response and request for hearing are timely filed, the Court may grant the relief requested as a failure to respond by any entity shall be deemed an admission that the relief requested should be granted.**

DATED this 24th day of May, 2022.

        **PATTEN, PETERMAN, BEKKEDAHL & GREEN, P.L.L.C.**
        2817 Second Ave. North, Suite 300
        P.O. Box 1239
        Billings, Montana 59101

        By:/s/JA Patten_____
            James A. Patten
            Attorney for Debtors

## CERTIFICATE OF SERVICE

    I, the undersigned, do hereby certify under penalty of perjury that on the 24th day of May, 2022 a copy of the foregoing was served by electronic means pursuant to LBR 9013-1(d)(2) on the parties noted in the Court's ECF transmission facilities and/or by mail and email on the following parties:

Jason R. Naess
Office of the United States Trustee
Office of the United States Trustee
550 West Fort St., Suite 698
Boise, ID 83724
Jason.R.Naess@usdoj.gov

Joseph J. McKay
Attorney at Law
P.O. Box 1803
Browning, MT 59417
powerbuffalo@yahoo.com

                                        By: /s/JA Patten
                                            For Patten, Peterman, Bekkedahl & Green, PLLC