Joseph J. McKay (I.D.#2423)
Attorney-at-Law
P.O. Box 1803
Browning, MT 59417
Phone: (406) 338-7262
Email: powerbuffalo@yahoo.com
Attorney for THE BLACKFEET INDIAN NATION

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>EAGLE BEAR INC.<br><br>Debtor. | Case No. 22-40035<br>Chapter 11<br><br>**BLACKFEET NATION'S RESPONSE TO DEBTOR'S MOTION TO DETERMINE THE EXTENT OF THE AUTOMATIC STAY WITH INCORPORATED MEMORANDUM OF LAW** |

COMES NOW the Blackfeet Nation and respectfully submits its Response to Debtor's Motion to Determine the Extent of Automatic Stay with incorporated Memorandum of Law, as it applies to Blackfeet Nation Indian trust land to which the Debtor has no leasehold or other protectable interest, as follows:

## INTRODUCTION

This action represents the latest desperate bad faith attempt by Eagle Bear, Inc. (hereinafter "Debtor") to illegally occupy Blackfeet Indian Nation trust land within the Blackfeet Indian Reservation. The Debtor has been unable to convince any other tribunal of its failed theory that a lease cancelled in 2008 is somehow still valid. The principal issue in this action, as it was in the action commenced by the Debtor in Federal District Court, is whether the former lease was cancelled in 2008. The Federal District Court found that the United States Bureau of Indian Affairs ("BIA") had cancelled the lease in 2008.

1

Eagle Bear now asks this Court to create a lease where none exists. There is no lease; there has not been a lease since 2008. The former lease was cancelled for cause by the BIA Blackfeet Agency on June 10, 2008. While an appeal was initially filed, that appeal was withdrawn before any decision was made reversing or withdrawing the cancellation decision. In accord with applicable Federal law and regulations, the cancellation became final on or about February 5, 2009. No further challenge was made and the applicable six-year statute of limitations ran in 2015. There is no lease. Nor is there any legal basis for review of that long-past action. The sole purpose of this proceeding is to attempt to invoke the automatic stay provisions of 11 U.S.C Sec. 362. That effort should be rejected.

Pursuant to 11 U.S.C. Sec. 365(c)(3) the Blackfeet Nation's campground on trust land is not part of the Debtor's estate in this proceeding.

## BACKGROUND

To the extent that it merely recites the facts, the BACKGROUND as set forth by the Debtor in its Motion to Determine the Extent of the Automatic Stay is fairly accurate with one glaring error – the recitation of the events surrounding the cancellation of the former lease on June 10, 2008 and up to January 5, 2009 when the Debtor withdrew its appeal of that cancellation. A summarized background can also be found in the Federal District Court's Order on Preliminary Injunction. *Eagle Bear, Inc. et al. v. The Blackfeet Indian Nation, et al., 21-CV-00088-BMM,* Doc. 27, pgs. 2-7.

Debtor was the former lessee under a lease of Blackfeet Nation Indian trust land located on the Blackfeet Indian Reservation. Because it was a lease of Indian trust land, the lease was governed by Federal law and regulations and administered by the Bureau of Indian Affairs. As District Court Judge Morris found in his opinion, almost from the outset, Eagle Bear began

2

violating the lease by failing to make required annual rental payments in a timely manner. Judge Morris identified 10 years from 1997 to 2007 where the Debtor failed to pay on time and the length of the delay in payments. *Id.* at 4-5. Pursuant to applicable federal regulations and the lease, each of those late payments accrued interest. The interest on the late payments identified by Judge Morris have not been paid to this date. However, the Debtor failed to name either the United States Government or the Blackfeet Nation as creditors in its petition.

On June 10, 2008, after giving due notice of its intent to cancel the former lease for non-payment, the Superintendent of the BIA Blackfeet Indian Agency cancelled the former lease for non-payment of the required 2007 annual rental payment. On June 16, 2008, the Debtor sent a check to the BIA for the delinquent payment for which the lease had been cancelled.

On June 18, 2008 the Debtor filed a Notice of Appeal and Statement of Reasons appealing the cancellation. In that Notice of Appeal and Statement of Reasons, the Debtor gave one single reason for appealing the cancellation of the lease. The Debtor falsely claimed in its Notice of Appeal and Statement of Reasons that it paid the delinquent payment for which the lease was cancelled on June 6, 2008 before receiving the cancellation letter. Pursuant to the applicable regulations, the Debtor's notice of appeal stayed the cancellation decision.

However, on January 5, 2009, the Debtor withdrew its Notice of Appeal and Statement of Reasons whereby it was appealing the 2008 lease cancellation decision of the Blackfeet Agency Superintendent. When the Debtor withdrew its Notice of Appeal and Statement of reasons, its agent made the false, unilateral declaration that the lease was current. It was not.

At the time that the Debtor withdrew its appeal, there was no written decision from the BIA Rocky Mountain Regional Director withdrawing, reversing, rescinding, modifying or amending the BIA Blackfeet Agency Superintendent's decision cancelling the lease.

Consequently, when the Debtor withdrew its appeal, the time for the cancellation decision to become final began to run. According to the applicable Federal regulations, the cancellation decision became final for the Agency on February 5, 2009.

Because the Blackfeet Nation was never made aware of the 2008 cancellation decision or the withdrawal of the Debtor's appeal of that decision and the BIA negligently failed to follow through with the cancellation decision, the Debtor was allowed to remain illegally on Blackfeet Nation land. The BIA's negligent failure to enforce the cancellation decision and the Debtor's act in holding over did not create any rights in the Debtor.

While the Debtor continued to illegally occupy Blackfeet Nation pursuant to the former lease, it had failed to make required annual gross receipt royalty payments for 2008, 2009, 2010 and 2011. The Debtor had also failed to collect and remit Blackfeet Nation lodging tax revenue, thereby depriving the Blackfeet Nation of much needed significant annual revenue. Under the mistaken belief that the former lease was still in effect, the Blackfeet Nation made a request to the BIA that the lease be cancelled (again) for non-payment of required payments. As with the delinquent annual rental payments, the delinquent gross receipt royalty payments accrued interest as required by the regulations and the law. The BIA Blackfeet Agency Superintendent cancelled the lease. The Debtor appealed. Because of the 2008 cancellation, that proceeding is moot.

After going to the Interior Board of Indian Appeals, the Debtor's appeal to the IBIA was vacated and remanded back to the Rocky Mountain Regional Director for supposed review of the 2008 lease cancellation. There is no legal authority for the BIA to go back 14 years to review a lease cancellation which long ago became final and is now beyond administrative review.

The Debtor's claims that there is still a lease because it withdrew its appeal at the request of a BIA staff member in the Blackfeet Agency who supposedly told him that the lease was

current, has already been rejected by the District Court as being unsupported by any law and contrary to federal regulations. It should be rejected by this Court.

### A. Because the Former Lease was Cancelled 14 Years Ago, the Automatic Stay Does Not Apply To The Former Lease.

Various sections of the Bankruptcy Code evidence Congressional intent to safeguard the interests of landlords of nonresidential commercial property. *In re Lakes Region Donuts, LLC,* No BR 13-13823, 2014 WL 1281507. Those sections, including Sections 362(b)(10), 541(b)(2) and 365(c)(3) were added as specifically protecting the interests of commercial lessors. *Id*. That protection would seem to be even greater in the context of Indian trust land for which the United States is the trustee and has a duty to manage Indian land in the best interest of the Indian beneficiary. This case in fact seeks to improperly substitute the Bankruptcy Trustee for the Federal Trustee of Indian land.

While 11 U.S.C. § 362 provides a general automatic stay of action against the debtor, § 362(b)(10) specifically excludes from the stay any act by a lessor to a debtor under a lease of nonresidential commercial property that has terminated by the expiration of the stated term of the lease before commencement of or during a case under this title to obtain possession of such property. 11 U.S.C. Sec. 362, 362(b)(10). The "terminated by the expiration of the stated term" language of 362(b)(10) has been interpreted to apply to situations where a lease has been terminated under applicable nonbankruptcy law prior to the expiration of the stated term. *See In re Policy Realty Corp.*, 242 B.R. 121, 127-128 (S.D.N.Y. 1999); *Robinson v. Chicago Hous. Auth.*, 54 F.3d 316, 320 (7th Cir. 1995)(the Bankruptcy Code draws no meaningful distinction between unexpired and terminated in the context of 365).

11 U.S.C. Section 541 establishes what constitutes the property of the debtor's estate, which generally is all the property of the debtor at the time of the filing of the petition, with some

5

exceptions.  One exception is any interest of the debtor as lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of a case under this title, ceases to include any interest of the debtor as a lessee. 11 U.S.C. Sec. 542(b)(2); *See In re T.A.C. Grp.*, 295 B.R. 202 (A lease that has been terminated prior to the filing of a bankruptcy petition is not property of the estate).

Section 365 of 11 U.S.C. provides that the debtor may assume an unexpired lease. However, Section 365(c)(3) prohibits the assumption by the debtor if the lease is of nonresidential real property and has been terminated by operation of nonbankruptcy law prior to the order for relief.  11 U.S. C. Sec. 365(c)(3).  A settled principle of bankruptcy law is that once a lease has been terminated, there is nothing for a debtor to assume.  *In re Maxwell,* 40 B.R. 231, 236-37 (N.D.Ill. 1984); *In re Player's Pub Inc.*, 45 B.R. 387, 394 (Bankr, Dist.Mas.1985).  Once a lease has been terminated, a bankruptcy court cannot revive it, even by its equitable powers, notwithstanding the debtors present ability to cure. *In re Neville*, 118 B.R. 14, 18 (Bankr.E.D.N.Y. 1990).

In determining whether a lease was in effect as of the petition date, courts look to the terms of the lease itself as interpreted by the governing state's law.  *In re Gateway Investors, LTD.*, 113 B.R. 564, 567 (Bankr.D.N.D. 1990).  In this case, the governing law, as required by Federal law and regulations was federal law and the regulations contained at 25 CFR Sec. 162.

Applying the foregoing provisions of Federal Bankruptcy law and Federal Indian leasing law, to the facts of this proceeding compels the conclusion that the lease was cancelled in 2008, that the automatic stay does not apply and that the Debtor has no right to assume a long terminated lease.  Nor does the Court have the power to create a new lease or revive the long cancelled lease.

B. **There is No Lease.**

The former lease in which the Debtor claims an interest was a lease of Indian Nation trust land. As such the United States government is the legal title holder in trust, for the benefit of the Blackfeet Nation. Leases of trust Indian land are governed by Federal statutes and exhaustive federal regulations. Whether there is a lease is a matter to be determined in accordance with the applicable federal law and regulations.

**1. The Federal District Court has Already Determined that There is No Lease.**

The question of whether the former lease upon which the Debtor relies has been terminated or not has been addressed by the Federal District Court. In its Order on Preliminary Injunction, the Federal District Court analyzed the lease, the record and the applicable federal law and regulations, and concluded that "the BIA cancelled the lease . . .." *Eagle Bear, Inc., et al. v. Blackfeet Nation, et al.* 4:21-CV-00088, Doc. 27 at 9. The District Court further concluded that, "[t]he record appears to indicate that the BIA . . . exercised its authority to cancel the lease on June 10, 2008." Id. at 10. Noting that the Debtor appealed the lease cancellation, the District Court held that a "ruling by the Rocky Mountain Regional Director constitutes the only action that could overturn the lease." Id. at 11, citing 25 C.F.R. § 2.4. Acknowledging the Debtor's claim that it withdrew its appeal of the lease cancellation based on an alleged discussions with BIA Agency staff, the District Court concluded, "Eagle Bear's withdrawal of the appeal made the lease cancellation effective." *Id.* at 11, citing 25 C.F.R. § 162.621 & 25 C.F.R. § 2.6(b).

Finding that nothing in the record indicated that the BIA Regional Director took any action to overturn the cancellation or even acknowledge the Debtor's claim in the January 5, 2009 letter that the lease was current, the District Court concluded that "BIA's decision to cancel

the lease in 2008 thus would have proved final through the administrative procedures of the BIA." Id. at 11, citing 25 C.F.R. § 162.621. Based on its determination that the record contained no document indicating that the BIA took any step to overturn the lease cancellation, the District Court concluded that, "[n]o lease would exist between Eagle Bear (the Debtor) and the Blackfeet Nation under the circumstances." Id.

The District Court rejected the Debtor's arguments that the lease was not cancelled because the BIA (and the Blackfeet Nation) continued to operate as if the lease remained in effect until 2017 and it rejected the Debtor's argument that oral representations of BIA employees who did not have authority could effect a reversal of the lease cancellation decision. Doc. 27 at 11-13. As to the latter, the District Court stated: "The Court questions how the BIA's alleged oral representations to the contrary could have any effect in overturning the final cancelation of a lease." *Id.* at 12, *citing Moody v. United States*, 931 F.3d 1136 (Fed. Cir. 2019).

Addressing the Debtor's argument that there were further administrative remedies to exhaust, the District Court determined that "the Blackfeet Nation and the Plaintiffs (the Debtor herein) appear to have exhausted the BIA's administrative proceeding with respect to the lease". *Id.* at 18. The District Court went on to conclude that the "cancellation would have become final in 2008 once the lease cancellation was not overturned on appeal." *Id.* citing 25 C.F.R. § `62.621, 2.6b (2008). As the District Court observed, "[t]he conclusion of the BIA's proceedings would mean that the lease between the Blackfeet Nation and Eagle Bear no longer exists." *Id.*, citing *Moody*, 931 F.3d at 1138. The District Court found that the "BIA lacks further authority to deliberate over the apparently cancelled lease agreement. The Blackfeet Nation must exhaust no further administrative remedies before bringing its complaint in the Tribal Court." Id. at 18-19.

8

### 2. The 2008 Lease Cancellation is No Longer Subject to Judicial or Administrative Review.

There is no lease. The former lease was cancelled on June 10, 2008 (almost 14 years ago) and that cancellation became final in February of 2009, 30 days after the Debtor withdrew its appeal. In accordance applicable agency law, the cancellation became "final" for the agency and is no longer subject to administrative review.

"As a general matter, two conditions must be satisfied for agency action to be "final": First, the action must mark the "consummation" of the agency's decision making process --it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow.""  *Bennett v. Spear,* 520 U.S. 154, 177-178 (1997) (citations omitted).

In *Big Lagoon Rancheria v. California*, 789 F. 3d 947 (9th Cir. 2015), the Ninth Circuit held that 28 U.S.C. § 2401(a) creates a general six-year statute of limitations for actions brought against the United States. See 28 U.S.C. § 2401(a) ("Except as provided by chapter 71 of title 41, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."). The Ninth Circuit has held that this rule "applies to actions brought under the APA." *Wind River Mining Corp. v. United States,* 946 F.2d 710, 713 (9th Cir.1991) (footnote omitted).

Applying these rules to the 2008 BIA cancellation of the former Eagle Bear lease results in the conclusion that the lease was cancelled, that the BIA's cancellation decision became final and is now no longer subject to administrative or judicial review.

### C. Because the Former Lease Was Cancelled 14 Years Ago, The Debtor's Estate in Bankruptcy has No Legal or Protected Interest in Blackfeet Nation Indian Trust Land, And the Automatic Stay Does Not Apply.

The District Court correctly found that the former lease was cancelled by administrative action of the BIA on June 10, 2008 and that the cancellation has since become final pursuant to applicable federal law and regulations. The Debtor's assertion that "no judicial or administrative body has ruled that the Lease has terminate due to a default" is simply false. The issue of the 2008 lease cancellation is not undecided.

The Blackfeet Nation could find no bankruptcy case which held that a debtor had a protected interest in Indian trust land based on a lease which had been cancelled 14 years prior to the filing of a bankruptcy petition. Quite frankly such a finding would seem contrary to the principles of Federal Indian law and Federal Government's trust responsibility to Indian Nations and their land. The Blackfeet Nation's trust land which was subject to former lease with the Debtor is not now and was never part of the Debtor's estate in this bankruptcy proceeding.

The Blackfeet Nation is one of the poorest Indian Nations in American. Glacier County is the poorest county in Montana. *DePietro, Andrew, "Poorest Counties In Every State 2021"; forbes.com.*. The Blackfeet Nation does not want to be forced into an illegal lease with a business partner who has already proven to be untrustworthy, unreliable and refused to make payments of essential revenue to the Blackfeet Nation and its People.

## CONCLUSION

The long cancelled lease of Blackfeet Nation land by the Debtor was never part of the Debtor's estate in bankruptcy and is not subject to the automatic stay of Sec. 362.

DATED this 26th day of May, 2022.

> By:   /s/ Joseph J. McKay_____
>       Joseph J. McKay
>       Attorney for the Blackfeet Nation

CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify under the penalty of perjury that on the 26th day of May, 2022, a copy of the foregoing was served by electronic means pursuant to LBR 9013-I(d)(2) on the parties noted in the Court's ECF transmission facilities and/or by email and email on the following parties:

Jason R. Naess
Office of the United States Trustee
550 West Fort St., Suite 698
Boise, ID 83724
Jason.R.Naess@usdoj.gov

James A. Patten
Molly S. Considine
PATTEN, PETERMAN, BEKKEDAHL & GREEN, P.L.L.C.
2817 2nd Avenue North, Ste. 300
P.O. Box 1239
Billings, MT 59103-1239
apatten@ppbglaw.com
mconsidine@ppbglaw.com

Charles E. Hansberry
Jenny M. Jourdonnais
HANSBERRY & JOURDONNAIS, PLLC
2315 McDonald Avenue, Suite 210
Missoula, MT 59801
Chuck@HJBusinessLaw.com
Jenny@HJBusinessLaw.com

DATED this 26th day of May, 2022.

        ____/s/__Joseph_J._McKay_____
          Joseph J. McKay